IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CLARENCE G. HOWARD, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | No. 5:10-cv-207 |
| | : | |
| KATRINA GREEN, | : | |
| DR. ROBIN GILL, and | : | |
| DR. ALETA GARDNER, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## RECOMMENDATION ON MOTION TO DISMISS

This case is before the Court on the Motion to Dismiss filed by Defendants Katrina Green and Dr. Aleta Gardner.[1] Upon review of the allegations in the pleadings, arguments of the parties, and the relevant legal authorities, the Court finds that Plaintiff's Complaint fails to state a plausible claim upon which relief can be granted. Accordingly, it is hereby **RECOMMENDED** that Defendants' Motion (Doc. 42) be **GRANTED**, and that this case be **DISMISSED**.

## PLAINTIFF'S ALLEGATIONS

On Motion to Dismiss, the Court accepts as true all factual allegations in the Complaint and must draw all reasonable inferences therefrom in the light most favorable to Plaintiff. Because Plaintiff is proceeding *pro se*, Plaintiff's pleadings are liberally construed and held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

In this case, Plaintiff brings claims under the Eighth Amendment, alleging deliberate indifference to serious medical needs. At all times relevant to the Complaint, Plaintiff was

---

[1] The record indicates that Defendant Dr. Robin Gill is now deceased.

incarcerated at the Georgia Diagnostic and Classification Prison in Jackson, Georgia. Prior to being incarcerated, Plaintiff had been receiving hormone treatments for twenty-seven years to establish a feminine gender identity. Dr. Gardner was a contract physician assigned to GDCP. Green was the Director of Health Services for the Georgia Department of Corrections in Atlanta.

The Complaint and the Recast Complaint allege that on March 22, 2007, shortly after Plaintiff entered GDCP, deceased Defendant Dr. Gill prescribed improperly high dosages of hormone medications (50 mg. Progesterone tablets) which caused Plaintiff's feminine features to deteriorate. On April 19, 2007, Dr. Gardner prescribed additional medication (80 mg. Progesterone injections). In August 2007, Plaintiff began to observe physical changes as a result of the treatments. Over the next several months, Plaintiff "was forced to watch 27 years worth of hormone treatment, breasts, facial features, hips, buttocks, general female physique diminish," and observed the "growth of facial hair which plaintiff never had." Recast Complaint p. 8 (Doc. 13). Plaintiff also experienced side effects including breast pain, back pain, soreness of the nipples, jaw cramps, and shaking.

Despite Plaintiff's complaints, Dr. Gardner refused to change the prescribed dosages. After numerous requests, Plaintiff was referred to a specialist on September 3, 2008. On November 5, 2008, the specialist, Dr. Mulloy, informed Plaintiff that the dosages prescribed by Dr. Gill and Dr. Gardner were "over the legal limit" and "could have caused" the decline in Plaintiff's feminine features. Recast Complaint p. 4 (Doc. 13). The specialist stated that the only way to reverse the effects of the medications would be through cosmetic surgery.

Plaintiff's only allegation against Defendant Green is that Green denied Plaintiff's grievance related to the treatments.

**LEGAL ANALYSIS**

Plaintiff's claims against Dr. Gardner are subject to dismissal because the factual allegations in the Complaint do not state a claim of deliberate indifference. They state, at most, a claim for medical malpractice. Dr. Gardner's conduct, as alleged, does not amount to cruel and unusual punishment under the Eighth Amendment.

To establish a violation of the Eighth or Fourteenth Amendment related to medical treatment, a prisoner must allege acts or omissions sufficiently harmful to evidence "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To show deliberate indifference, the prisoner must satisfy both an objective and a subjective component. Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1186 (11th Cir. 1994) ), *overruled in part on other grounds,* Hope v. Peltzer, 536 U.S. 730 at 739 (2002), (citing Wilson v. Seiter, 501 U.S. 294 (1991) (subjective component), Whitley v. Albers, 475 U.S. 312 (1986)(subjective component), and Rhodes v. Chapman, 452 U.S. 337 (1981)(objective component). With regard to the objective component, a prisoner must allege both an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm, and also that the response by the prison official to that need was poor enough to constitute an unnecessary and wanton infliction of pain. Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000). With respect to the subjective component, a prisoner must allege, and ultimately prove, three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that is more than gross negligence. McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir.1999). As these requirements make clear, in the context of a 42 U.S.C. §1983 lawsuit, "mere accidental inadequacy, negligence in diagnosis or treatment, [and] even medical malpractice" are not actionable. Taylor, 221 F.3d at 1258.

The Court assumes for purposes of this Motion to Dismiss that gender identity disorder is a "serious medical need" that would pose a substantial risk of serious harm if left untreated. At present, courts across the country appear to acknowledge that transsexualism or gender identity disorder can present a serious medical need. For example, one district court in Wisconsin has observed that contemporary standards of care hold that gender identity disorder is a serious condition that can have "disastrous consequences" if left untreated. Konitzer v. Frank, 711 F.Supp.2d 874, 905-07 (E.D.Wis. 2010). As such, "a complete refusal by prison officials to provide a transsexual with any treatment at all would state an Eighth Amendment Claim for deliberate indifference to serious medical needs." Murray v. U.S. Bureau of Prisons, 1997 WL 34677, *4 (6th Cir., Jan. 28, 1997). Other courts have acknowledged or assumed, without deciding, that gender identity disorder or transsexualism presents a serious medical, but found that refusal to provide hormone therapy does not constitute deliberate indifference. See e.g., Praylor v. Texas Dept. of Criminal Justice, 430 F.3d 1208 (5th Cir. 2005).

Plaintiff's allegations make clear that Dr. Gardner did not refuse to provide Plaintiff with continued hormone treatment to maintain Plaintiff's feminine identity. Instead, Plaintiff contests only the dosages prescribed. Plaintiff's claim, then, is that Dr. Gardner was negligent in her medical judgment and in the course of treatment chosen. Claims of negligence, even gross negligence, are not recognized under Section 1983. Where medical treatment is provided, but is alleged to be inadequate, it must be shown to be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991). The allegations in Plaintiff's Complaint do not rise to such a level.

Plaintiff's Complaint also fails to state a claim against Defendant Green. The only allegation against Green is that Green failed to grant Plaintiff's grievance regarding the course of treatment

prescribed by Dr. Gardner and Dr. Gill.  A defendant who is in a supervisory position may not be held liable on a theory of *respondeat superior*.  A plaintiff must show that the supervisor participated in the conduct or that there was a causal connection between the actions of the supervisor and the alleged unconstitutional conduct.  Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  A causal connection can be shown by a "custom or policy" or by "a history of widespread abuse" that puts the supervisor on notice of the need to correct the alleged deprivation. Id.  There is no allegation that Green was personally involved in any decisions related to Plaintiff's medical treatment.  The denial of a single grievance, after the fact, is insufficient to establish a custom or policy or a widespread history of abuse that would have made Green accountable for decisions made by Dr. Gardner.

To the extent that Plaintiff's Complaint seeks to bring state tort claims for intentional infliction of emotional distress or for medical malpractice, Defendants Green and Gardner are protected by Georgia's doctrine of official immunity. O.C.G.A. § 50-21-25(a).  Plaintiff must bring such claims against the State in a state court pursuant to Georgia's Tort Claims Act, O.C.G.A. § 50-21-25(b).

Accordingly, **IT IS RECOMMENDED** that the Defendants' Motions to Dismiss be **GRANTED**.   Because the Recommendation entails the dismissal of all claims, it is further **RECOMMENDED** that all other pending motions (Docs. 78, 79, 80, 83, and 86) be **DISMISSED**, as moot.

The Court notes that it has reviewed and considered Plaintiff's original Complaint, along with the supporting documents, in consideration of the Motion to Dismiss and preparation of the present Recommendation.  Accordingly, Plaintiff's Motion of Inquiry (Doc. 77) is hereby **GRANTED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may serve and file written objections to this **RECOMMENDATION** with the district judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

**SO RECOMMENDED**, this 9th day of September, 2011.

                                                s/ Charles H. Weigle
                                                Charles H. Weigle
                                                United States Magistrate Judge